INTERNATIONAL HARVEST HAT CO. *v.* UNITED STATES

No. 4594.—Invoices dated Tehuacan, Mexico, April 18, May 9, 1936. Entered at St. Louis, Mo., May 11, 25, 1936. Entry Nos. 1746, 1847.

Second Division, Appellate Term

(Decided on rehearing [Reap. Dec. 4422] June 9, 1939)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellant.
*Webster J. Oliver*, Assistant Attorney General (*William J. Vitale*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: This is an application for a review of the decision of the trial court in which it found that the appraised values were the proper values for duty purposes of certain so-called harvest hats imported from Tehuacan, Mexico, by the appellant herein.

In the view which we take of this case it is unnecessary to consider or discuss the merits of the case in detail. During the trial of this case the plaintiff offered in evidence certain price lists or quotations in the market at Tehuacan for such or similar merchandise to that involved in these two appeals. Entry of this merchandise was made on May 11 and May 25, 1936, respectively, and the entry states that the ship upon which it was imported sailed on May 3 and May 17, 1936, respectively.

The price lists or quotations above referred to are dated April 18, 1936, May 16, 1936, June 14, 1936, June 21, 1936, and May 12, 1937, respectively, and attached to each of said price lists or quotations is the following affidavit:

I, Jose A. Castillo, Tehuacan, Pue, Mexico, do hereby state, under oath, that my business is that of Commissioner engaged in buying Mexican Hats for export on a commission and exporting same to the United States. I do further state, under oath, that the attached statement represents the prevailing wholesale market prices for Mexican Hats for export in the usual wholesale quantities as of the date stated on this quotation.

The trial judge refused to admit these said price lists or quotations in evidence, to which ruling counsel for the appellant duly excepted, and each of the said price lists or quotations were marked for identification. Appellant's assignment of errors 14 and 15, read as follows:

In sustaining, and in not overruling, the Government counsel's objection to exclude from the record the quotation or price list now marked exhibit 8 for identification.

In sustaining, and in not overruling, the Government counsel's objection to exclude from the record the four quotations or price lists now marked exhibits 9, 10, 11, and 12 for identification.

In the case of *United States* v. *Titan Shipping Co.*, 25 C. C. P. A. 403, T. D. 49485, the appellate court, in dealing with a similar situation, held as follows:

We agree with the appellate division that the trial court erred in excluding said affidavit, but hold that the appellate division, instead of considering the case on its merits and treating said affidavit as a part of the evidence in the case, should have reversed the trial court and remanded the cause for a new trial, or at least have directed the trial court to admit said affidavit in evidence and make new findings after weighing said affidavit, together with the other evidence in the case.

In our opinion these price lists, quotations, or affidavits, now marked Exhibits 8, 9, 10, 11, and 12 for identification, should have been admitted by the trial court, and its refusal to admit the same constitutes reversible error, since their exclusion was prejudicial to the appellant and undoubtedly affected the determination of this cause.

We also call attention in passing to the fact that the record would seem to indicate that the hats upon which the appraisement appears to have been based are of a better quality or grade than the hats in this case. In this respect one of the witnesses testified that they took all the hats he buys from the Indians regardless of the grade or quality, and that they grade the hats themselves, that they purchase everything from the donkey's back, whether good, bad, or intermediate, except those with holes in them.

With reference to the prices received for such or similar hats to those here involved by the bargaining method the trial court in its opinion stated:

In view of the foregoing I am convinced that a finding of foreign or export value, as those values are defined in section 402 of the Tariff Act of 1930 cannot be based upon the transactions between the collectors and those who purchase from them. The statute defining both of those values contemplates uniformity within close limits in the price at which goods are freely offered for sale, which I find does not obtain with regard to the offers to sell made by collectors of these hats in Tehuacan. In this connection see *Frederick H. Cone & Co., Inc.* v. *United States*, Reap. Dec. 4289.

Section 402 (c) of the Tariff Act of 1930 defines foreign value as follows:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402 (d) of said act, defining export value, is quite similar, so far as it applies to this case, and in neither of said provisions do we find any restriction that both of those values shall or must be within close limits as to the price at which goods are freely offered for sale. In the case of *United States* v. *Minkus*, 21 C. C. P. A. 382, T. D. 46912, the appellate court stated:

It is just as evident, however, as was held in the case of *G. W. Pleisner* v. *United States, supra*, that the Congress did intend, by the use of the word "usual," to limit the words "wholesale quantities" to such wholesale quantities as were *usually, customarily, and ordinarily* freely offered for sale to all purchasers in the principal markets of the country of exportation, in the ordinary course of trade; and that the language "in the usual wholesale quantities" was intended "to refer to a major portion of the sales or offers for sale," in wholesale quantities, of imported merchandise * * *. [Italics ours.]

It would therefore appear that if the sales made by collectors of these hats to the respective purchasers were usually, customarily, and ordinarily made, and the merchandise was so offered for sale to all purchasers in the principal markets of the country of exportation, in the ordinary course of trade, in the usual wholesale quantities, no reason exists why such sales should not be taken into consideration in determining the proper dutiable value of the hats in this case. So far as the trial court's opinion refers to the case of *Frederick H. Cone & Co., Inc.* v. *United States*, Reap. Dec. 4289, as supporting its position, attention is called to the fact that said decision was, on October 18, 1938, reversed by this division, Reap. Dec. 4415, and no appeal therefrom was filed.

For the reasons stated, the decision and judgment of the trial court is reversed and the case remanded with instructions to admit in evidence the price lists, quotations, or affidavits, now marked Exhibits 8, 9, 10, 11, and 12 for identification, and make new findings of fact after weighing said price lists, quotations, or affidavits, together with the other evidence in this case, and in the light of the other observations made in this opinion. Judgment will be rendered accordingly.